IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DEBRA BUKES,

    Plaintiff,

v.

HAMMERSMITH DATA MANAGEMENT, INC.
d/b/a Hammersmith Management, Inc. and
PALOMINO PARK OWNERS ASSOCIATION

    Defendants.

---

## COMPLAINT

---

Plaintiff Debra Bukes ("Bukes"), by and through her attorneys, Connolly Law Firm, LLC, hereby submit her Complaint against Defendants Hammersmith Data Management, Inc. ("Hammersmith") and Palomino Park Owners Association ("Palomino" and collectively "Defendants") as follows:

### JURISDICTION AND PARTIES

1.    Debra Bukes is a citizen of Douglas County, Colorado, and is a qualified person with a disability as that term is defined under Title III of the ADA 42 U.S.C. §12131.

2.    Hammersmith is a property management company and a Colorado corporation with its principal place of business in Colorado. Hammersmith is a "private entity" as that term is defined under Title III of the ADA, 42 U.S.C. §12181. On information and belief, Hammersmith is the agent for Palomino.

3. Palomino is a non-profit Colorado corporation which operates and/or owns an apartment complex commonly known as Palomino Park with its principal place of business in Colorado. Palomino is a "private entity" as that term is defined under Title III of the ADA, 42 U.S.C. §12181.

4. This Court has jurisdiction over the claims brought by Bukes against the Defendants pursuant to 28 U.S.C. §1331. This action is authorized pursuant to Title III of the ADA, U.S.C. §12180 et seq. This court has jurisdiction to hear Bukes' state law claims pursuant to 28 C.F.R. 1367.

5. Venue is proper in this District because all parties reside and/or conduct business in this District and pursuant to 28 U.S.C. §1391(b) and (c) in that the alleged conduct giving rise to these claims occurred within this District.

**FACTUAL BACKGROUND**

6. Bukes incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

7. Bukes is a 52 year old woman who lives with metastic stage 4 breast cancer. It is terminal. Bukes has suffered through being in a coma for 21 days from which she had to re-learn all of her motor skills, including the ability to walk again. Bukes requires a service animal for a major life function, that being walking and her mobility.

8. Bukes is disabled as that term is defined pursuant to the Americans with Disabilities Act (the "ADA") and Colorado law.

9. Under the ADA and Colorado law, Bukes is entitled to use a service animal and, in fact, necessarily uses a service animal to enable her to function.

10. Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go. Specifically, the ADA mandates that:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

- Establishments that sell or prepare food must allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals. In addition, if a business requires a deposit or fee to be paid by patrons with pets, it must waive the charge for service animals. See 42 U.S.C. § 12182.

11. Bukes was employed by Hammersmith as an attendant at Palomino's Ironhorse Gym from September 11, 2015, until July 19, 2017, when she was constructively discharged from her employment by Hammersmith. The gym is part of an apartment complex commonly known as Palomino Park and is owned and operated by Palomino.

12. From her nearly two-year employment with Hammersmith at Palomino Park, both

Hammersmith and Palomino had actual knowledge that Bukes needed and used a service animal due to her disability.

13. On June 10, 2017, Bukes went to the Palomino pool with her son and two of his friends. As usual, Bukes had her service dog with her. Bukes sat with her friend, Teresa Martin, at the pool while her son and his friends went into the pool. Bukes had her service dog at her side in the shade in the grass adjacent to the pool area.

14. A new employee of Hammersmith, Connor Phibbs, approached Bukes and asked who she was. Bukes informed him that she was an employee on her day off and that the dog was a registered service animal. Mr. Phibbs left and later returned with Dan Krummick, a supervisor at Hammersmith, who knew Bukes from her employment at Hammersmith. Although Mr. Krummick was clearly aware of Bukes' disability and need for a service dog, he and Mr. Phibbs approached Bukes and asked for the registration for her service animal. Bukes showed the registration to Mr. Phibbs and he informed her that Mr. Krummick will demand that Bukes and her service animal leave the pool area and restaurant area.

15. Mr. Krummick then told Bukes that she and her service animal are not allowed in the pool area or restaurant area and that her service animal is only allowed to accompany Bukes to work in the gym. Bukes then asked ,"If I had Brewer [her service animal] at work and wanted to eat or get a drink at the restaurant, Brewer would not be allowed?" Mr. Krummick responded, "That's right" and demanded that Bukes and her service animal immediately leave the pool area. Bukes was dumbstruck and began to cry. Mr. Krummick made his statements in front of Bukes' friend, Ms. Martin, her son, and his friends.

16. Bukes immediately felt a wave of anxiety and stress. Bukes and her service

animal were then kicked out of the pool area.

17. At all relevant times, Mr. Krummick, as one of Bukes' supervisors, was aware of Bukes' terminal health condition and the necessity of her service animal.

18. Defendants' actions have and continue to cause Bukes irreparable harm.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Americans with Disabilities Act 42 U.S.C. §12101 et seq.)**

19. Bukes incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

20. Defendants' conduct in ejecting Bukes from the pool area was discriminatory and denied her the opportunity to enjoy Palomino's amenities or to benefit from the goods, services, and activities provided by the Defendants in violation of 42 U.S.C. §12182 and its implementing regulations.

21. As a result of Defendants' actions, Bukes has suffered consequential damages including personal injury, pain and suffering, and emotional harm and distress.

22. Bukes has and continues to suffer irreparable harm as a result of Defendants' violations of her rights under the ADA.

23. Defendants' conduct is ongoing and given that Defendants have not complied with the ADA requirements as described above, notwithstanding that those requirements have been in place since 1991, Bukes invokes her statutory right to injunctive relief against Defendants, as well as costs and attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Violation of Colorado Revised Statutes §§24-34-803 and 804)

24. Bukes incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

25. Defendants' conduct in ejecting Bukes from the Palomino Park pool area was discriminatory and denied her the opportunity to enjoy Palomino's amenities or to benefit from the goods, services, and activities provided by the Defendants in violation of C.R.S. 24-34-803(1) and §24-34-804(1). For their conduct, Defendants are liable to Bukes pursuant to §24-34-804(2) and (3).

26. Bukes has and continues to suffer irreparable harm as a result of the Defendants' violations of Bukes' rights.

## THIRD CLAIM FOR RELIEF

### (Outrageous Conduct/Intentional Infliction of Emotional Distress)

27. Bukes incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

28. With actual knowledge that Bukes was disabled and needed a service animal for her disability, Defendants and Mr. Krummick engaged in outrageous conduct in evicting Bukes from the Palomino Park pool area.

29. Defendants' actions in forcing the eviction of Bukes from the Palomino Park pool area were reckless or done with the intent to cause Bukes severe emotional distress.

30. Bukes has suffered severe emotional distress due to the outrageous conduct of the Defendants.

WHEREFORE, Plaintiff Debra Bukes prays for:

a. a permanent injunction pursuant to 42 U.S.C. §12188(a)(2) and 28 CFR §36.504(a) directing Defendants to comply with the requirements of the ADA and Colorado law and which further holds that this Court shall retain jurisdiction for a period of one year after Defendants certify that they are in compliance with the relevant requirements of the ADA and Colorado law;

b. an award of $3500, pursuant to C.R.S. §24-34-802(2)(a)(III), and an award of Bukes' costs and attorneys' fees pursuant to §24-34-802(3);

c. an award of damages in an amount to be determined at trial for the outrageous conduct and infliction of emotional distress caused by Defendants; and

d. all other legal and equitable relief allowed by law, and which the Court deems just and proper.

**DEBRA BUKES REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: September 20, 2017.

By: */s/ Michael A. Connolly*

Michael A. Connolly, Esq.
CONNOLLY LAW FIRM, LLC
6300 S. Syracuse Way, Ste. 220
Centennial, CO 80111
Telephone: (720) 273-2052
Email: mconnolly@connollylawfirm.net
*Attorneys for Debra Bukes*